The next case for argument is 23-2040 Sonos v. Google Sonos v. Google Good morning, Your Honors, and may it please the Court, Eric Chomsky representing Sonos. Your Honors, this IPR was plagued by hindsight bias. Google banded together discrete portions of two fundamentally different references to mimic Sonos' patent for a home audio system. But neither the Board nor Google's expert addressed the critical technological differences between Qureshi and Allshake, the fact that they were directed to different problems and as a result sought to solve them in critically different ways. Now, I think those sort of threshold issues are laid out very clearly in the briefing. I'd like to jump directly to how the use of Qureshi's IPAM server to satisfy Claim 1 illustrates this hindsight bias. Parenthetically, I do want to make sure this morning to get to the even greater disconnect reflected in Google's theory about Claim 9's messaging scheme. But let me start with Claim 1. Google plucked the remote IPAM server out of Qureshi's antiquated system and inserted it into Allshake's more modern architecture, which is built around a home network. Now, BIMS, Google's expert, said that Allshake teaches directly retrieving remote content from a remote server for playback and that a skilled artisan would look to Qureshi for details about how to do so. And that's wrong for two different but each fundamentally important reasons. First, Allshake does not, in fact, disclose directly retrieving remote content. When you look at the critical passages of Allshake, and those are paragraphs 94 to 96, there simply is no disclosure of that. Each of the examples in 94 to 96 are about content that is on the mobile device, flowing through the mobile device, or, in one other example, in a media server that is on the same home network. So the critical predicate, the critical premise of BIMS's assertion on this is just wrong. The second set of reasons go to BIMS's explanation for why, if you accepted the premise that Allshake is doing this direct downloading, why you would want to modify Allshake with Qureshi. And what BIMS says is you would be motivated to improve the user experience by saving resource locators on the playback device, and the reason you would want to do that is you want to minimize interruptions if the mobile device failed. So this is really all about just the question of these resource locators and having them on the playback device. There is a critical difference here, and this looks very much like this court's decision in TQ Delta, where there's a real gap here. There's a gap between the what and the how. The what is the resource locators, and again, if you're accepting the premise that one would modify Allshake in this way, you have the resource locators there, but that is a totally separate question from how you get them there. Put a slightly different way. If the goal is to get resource locators delivered to the playback device, it doesn't matter if you're doing that using the iPad server or if you're doing it using the mobile device itself, and BIMS doesn't even begin to fill that gap. BIMS doesn't explain why you would take the iPad server and plug it into Allshake. Remember that in Allshake, everything is done over a home network. The whole idea of Allshake is that you're using the invention to transfer content from a mobile device to a home network, and you see this if you look at figure one of Allshake, which is reproduced in our opening brief at page 23. Everything is centered around that kind of direct transmittal from the mobile device over the home network. In fact, that's actually the title of Allshake. The whole idea is that kind of transfer from the mobile device to the home network. The iPad server... What about, I mean, the problem that you have with your case is your standard of review, right? I mean, every issue you've raised is a factual question, right? So the question is whether there's substantial evidence to support the board's findings. And there's a lot of things they said, like including that Allshake and Courage Sheet are in the same field of endeavor, they deal with similar devices, they're directed to the same problems. And how do you deal with all of that? I mean, they don't seem far-field to me. Nobody's arguing that they're not analogous to the claimed invention. I mean, not that I think they should, but I'm struggling with your arguments because of that. Maybe if I were a fact finder, I might look at some of the things that you're saying and say, oh, that makes some sense. But I'm not sure that I can say that what the board found here and what, based on the references themselves, the technology at issue, and the expert testimony, I'm having a hard time saying it's unreasonable. Sure, Judge Stolz. So let me try and answer that in two separate ways. And let me try and disaggregate the sort of threshold set of questions which I set aside in my opening about the different problems and different solutions. And let me disaggregate that from the question about how the IPAM server works or the direct downloading from a remote device. As for the first set of those, there is just a huge gap in the record here in the following sense. This court has said over and over, cases like DSS and TQ Delta, it's fine to assert that there are similarities, but the board also has to consider the differences. And the board just doesn't do any business whatsoever with the differences. And BIMS doesn't either. If you look at the critical paragraph from BIMS, which is paragraph 72, that the board relies on, he doesn't deal with those differences at all. So that is, Judge Stolz, one way in which there is a complete lack of substantial evidence. But I think the differences are readily apparent. Obviously, these two references disclose different systems that work differently with some common objectives. But the point I think here is that the board concluded that the references basically show, recognize common elements that would have been obvious to put together because they would yield predictable results. It's the same kind of teaching that comes from KSR. And why is that wrong? So I think that the, and again, this goes back to cases like DSS and TQ Delta, the board has to actually address those differences. I mean, that is what this court has said over and over is the essence of reasoned decision making. And TQ Delta says that. I mean, in TQ Delta, the problem there was that even combined, all the limitations weren't met. And here, I don't hear you saying that the back end, when you take the front end of one system and the back end of another, limitations aren't being met. So not as to claim one, but let me, I don't want to die on this hill. I do want to focus on the direct downloading point. Because even if you accept that these are analogous, or that Judge Lynn, to your point, there is some obvious similarity, you still have this complete lack of substantial evidence about direct downloading. And I freely acknowledge the standard of review is tough. It always is when you're challenging a board decision. But the critical premise for what Vins was saying here is that all Qureshi directly downloads. The line that the board reproduces at 40 to 41 is that Alsheikh can directly retrieve media content from a remote server for a playback. And that is absolutely missing from Alsheikh. If you look at paragraphs 94 to 96, and Vins doesn't add anything to those paragraphs. Vins, at paragraph 128, just parrots what those paragraphs say. Those do not show direct downloading. What Alsheikh teaches, and again, this relates to the critical architecture of Alsheikh, which is that it's built around a modern home network. Alsheikh talks about content that is on the mobile device. If you're looking again at figure one on page 23 of the opening brief, you also can have media content. That's item 15 on the bottom left flowing through the mobile device. Or, and this is not on the diagram, but it's in paragraph 96 of Alsheikh, you can have a media server, but that is also on the home network. There is no disclosure whatsoever of directly downloading that kind of mobile device. And so Judge Stolt, again, accepting the standard of review, accepting the difficulties of substantial evidence review, there is no evidence on that critical premise. But, again, if you go beyond that, there also is this fundamental gap in what Vins said, and this I do think is very much like TQ Delta, where the expert didn't explain why you would use the iPad server. The expert just says, and this is where I was leaving off, that you have these resource locators, and those are the backend architecture, or the backend functionality, to use Google's term, that allows you to directly download from the cloud. But that tells you nothing whatsoever about how those resource locators get there, and Vins offers no explanation of why you would do that using the iPad server, which is so fundamentally inconsistent with what Allshake teaches. I do want to make sure to get to Claim 9, and I see that I'm already into my rebuttal time. But on Claim 9, the problem is even greater. Even if you accept the board's findings about Claim 1, Claim 9 features a, it requires a feature that is totally foreign to both references. That is, sending this message from the mobile device to a streaming content server that causes a first cloud server to take certain actions. And Vins, again, recognizing the standard of review, Vins doesn't say that. All he says is that Allshake's mobile device sends a message to the streaming content service, and this is where we get to this extraordinary admission in Google's red brief at page 53, where they seem to acknowledge that the proposed combination doesn't actually meet the limitations of the claim. Judge Stoll, I want to make sure to differentiate between the Claim 1 and Claim 9 on the point you were raising. Here, the elements simply are not present. They acknowledge now that in their proposed combination, the mobile device is sending two separate messages, one to the first cloud server and another one to the streaming content service, and they say at the bottom of page 53 that that second message is extraneous. Now, whether you think about this as an admission or a new claim construction argument on appeal, that is absolutely at war with what Claim 9 requires. Claim 9 requires a message from the mobile device to the streaming content server. That causes the first cloud service to do something. So just to be clear, you're saying that it sends two messages, or are you saying that there's never a message sent to the streaming content service? On Google's theory on appeal, as I understand it, there are two different messages being sent, and neither of them satisfy the requirement of Claim 9 that you have a message to the streaming content service that causes the first cloud server to do something. It's two separate messages going to separate places. I do see that I'm well, well into my rebuttal time, so I would leave it there. Thank you. Good morning. Good morning. Good morning. Good morning, and may it please the Court. None of Sonos's arguments change the fact that substantial evidence supports the Board's findings, and all of the issues on appeal, as you noted, are substantial evidence. I'll go ahead and start with Claim 9, since that's where they finished up, and I'd like to point out, as counsel said, this is a missing element argument that they are making, and it's from their great brief. Their problem is that this is the strongest case of many where they have forfeited an argument. Claim 9 presents the strongest case of forfeiture in the case. Below, in the record, they argued a missing element argument against Claim 9. They argued it in their Patent Owner Response, in their Patent Owner Cert Reply, and their expert, Dr. Schmidt, testified about it. Everything was about the lack of the claim element in al-Sha'iq or al-Sha'iq and Qureshi. They switched tactics in their blue brief, and their blue brief, the issue they present to this Court, and their entire blue brief is a motivation to combine argument about the incompatibility of the technologies and why the Board hadn't made the case that... That's just for Claim 9. This is for Claim 9. That's right. That the Board hadn't shown substantial evidence that a skilled artisan could or would combine the references in the way it was proposed. None of that was raised below, and that was clearly forfeited. When Google raised that in our red brief, they tried in their gray brief to switch tactics, and they presented the argument that's been presented to the Court this morning, which counsel said is a missing element argument. But that argument has been forfeited here at the appellate level because they didn't carry that into the appeal in the first place from the case below. You're saying their blue brief only focuses on motivation to combine. It doesn't have the missing element argument. That's right. So they forfeited... The motivation to combine argument was all they put in their blue brief. Do you think you conceded anything as counsel alleges on your red brief at page 53? Do you have a response to that? Yes, and in case the Court finds that it's not forfeited, it was not a stunning concession by Google. Simply, on the substance for Claim 9, Google explained that Sonos was misreading the combination for Claim 9. And Google cited to the substantial evidence the Board has, both in paragraph 151 and in 101 of Dr. Bim's testimony. And in particular, we pointed out that Claim 9 depends from Claim 1. And in Claim 1, Dr. Bim introduced evidence to explain that when the combined system, to use your phrase, Judge Stoll, the back-end IPAN server of Qureshi and the front-end interface of Al Shaikh, when those are combined, when inputs are received to transfer, which is earlier in Claim 1, the transferring step in Claim 1, one of the things... There are several things in Claim 1 that happen when input to transfer is received by the control device. One of the things that happens in Claim 1, as Dr. Bim's explained and cited to the references in the combination, is that that input causes the transfer of the playlists from the IPAN server to the playback devices. That's in the underlying Claim 1. And Dr. Bim's testified, and I might just take you right to Bim's... Bim's... And that is Appendix 3169. And this is cited by the Board in its findings for Claim 9. So in Paragraph 151, at the second half of that paragraph, this is where Dr. Bim was talking about, as explained earlier with respect to Claim 1. It's the final sentence on Appendix 3169. As explained earlier, those inputs cause the first cloud servers to add the multimedia content to the local playback queue on the device. So that's in the underlying Claim 1, he says, that's what starts everything off, is those user inputs, the command to transfer. What he says earlier in that paragraph is that those inputs also cause a message to go to the streaming service. And what he says in particular is in Claim 9, in the combination, the control device uses a service-specific application on the control device of Al Shaikh. So that when the transfer command comes in, a message goes from the control device to the service, because it's a service-specific app on the device, and it goes out to the streaming service. And Sonos does not dispute that that's the case, that that would make sense, and that that's taught by the references, that when there's that service-specific app on the control device, there's a message to the streaming service. And so Paragraph 151 clearly lines up the evidence that the Board relied upon here, that it is the user inputs, that command to transfer that comes in, that does both of the things that are recited in Claim 9. It causes the IPAN server to send the playlist down to the playback devices, and it sends the message to the streaming service. This honor, obviously Sonos is arguing with respect to Claim 1 that there's a missing motivation to combine Alsheikh and Qureshi. I really don't like the phrase motivation to combine. I think it's better analytically to think about this in terms of a reason to combine. And in all of these obviousness cases, you look to the references that are cited to see what reason may be discerned from those references as to why one of our new skill in the art would combine this technology. And it seemed to me in reading the Board's decision that the Board put a lot of emphasis on the testimony of Dr. Bims. And as I read through the Board's decision, I said to myself, well this sounds like the Board is considering this as if the rejection was Alsheikh in view of Qureshi and Bims, as if Bims was another reference. I mean Bims, you're talking about this is a reason, that's a reason. But the question is where is the reasoning in the cited references that would suggest to a person of skill in the art to combine these references? Sure. So in the references themselves, I think one of the links that Bims pointed out that the Board relied upon was that Alsheikh describes, it's in its system, it describes the use of playlists and metadata for the media. It describes that very briefly and does not give any detail about how that's implemented. But it does mention that those are used and that's in paragraph 87 of Alsheikh, which was cited by Dr. Bims as one of the many similarities between the references, is that Qureshi has great detail about playlists and playlist functionality that's provided by the IPAN server. And that Alsheikh mentions playlists and metadata, which there's no dispute, the metadata would be the URLs that are the playlists in Qureshi. And so that's one of the links that's directly from the reference that the Board said would make sense and that was in Appendix 4041. One of the many reasons that they find a motivation to combine was that Alsheikh mentions playlists and metadata but does not provide details on how that's implemented, particularly when the playlists are not the actual songs, the playlists are the URLs so that the device can then retrieve the songs from the server. And I know there was a lot of emphasis on paragraphs 94 and 95 but those paragraphs don't say a whole lot. So I think the mistake that Sonos is making is saying that that is the only evidence the Board relied upon and that is not the only evidence that the Board relied upon for the teaching of the rendering devices and Alsheikh directly retrieving content from the streaming server. Yes, paragraph 94 was cited because it says twice that the playback devices may or may not receive their content through the mobile device. What else? So the other paragraphs I'll point you to are paragraph 93 where, and this is again Dr. Bims, he was very helpful and his testimony is evidence that the Board relies upon. I'm looking at the reference. Okay, so look at the reference, yes. So if you want to go with me to paragraph 93 of Alsheikh. Paragraph 93 about five lines down talks about internet media content which may be rendered and then about middle of the paragraph enabling transfer of the media to the target rendering devices or to the target rendering device among the available rendering devices. So this is showing that there's internet media and that it can be transferred to the playback devices. So that's one step in the process or one of the pieces that Dr. Bims explained in his paragraphs 126 to 128. Another I'll point you to is in paragraph 80 and this goes to the technical differences that Sonos has tried to argue about, many of them for the first time on appeal. If you go to paragraph 80 of Alsheikh it says specifically that that home network, I think Counsel for Sonos says Alsheikh everything has to happen over the home network. Here in paragraph 80 it says the home network, the last sentence, may provide a connection to other networks such as for example the internet. And so it wasn't just that one paragraph that that board relied upon. In appendix 41 they were looking yes at the paragraph that says the content may or may not go through the mobile device to get to the rendering device but they were also looking at the rendering device it says can receive internet content, can receive streaming content and it has this paragraph that says the devices are connected to a home network which is connected to the internet. So those are the pieces in the reference itself that belie the argument Sonos is trying to make. Thank you. I'd like to point out just a couple of other differences to go back to the technical differences. In addition to those network based disclosures in Alsheikh I just wanted to make you aware of from the other direction trying to say that Qureshi is an archaic outdated by a few years not really but that it doesn't disclose any use of a home network and that's not the case and there were several citations in Qureshi that were relied upon by or that we cited in our brief including let's see in column 2 line 58 of this is in Qureshi optionally a local area network can be configured in place of or in addition to the internet connection to facilitate assignment of playlists and other features. What appendix page are you on? I'm sorry appendix 3350 into 3351 it's the sentence matching that and that's one of many citations about a local area network being either in addition to the internet that's disclosed as the connection in Qureshi or in place of it and so the idea that taking Qureshi and that it would have been different networks to combine them with Alsheikh which has a primary network as a home network is contradicted another citation is on appendix 3351 around about column 3 around about line 58 again a local area network can be used to connect to a PC or other network network enabled audio devices to allow shared storage across the devices so and there are others as well and this Judge Lynn to your point earlier these are coming from the reference and not Dr. Bim's because these were not raised below these types of detailed technical arguments that Sonos has made about the differences in the playback devices or the differences in the networks was not raised to the board you'll notice they're not citing any of their own expert testimony despite saying that these technologies are so very important but to the extent that they have raised them here the references themselves belie their arguments if there are no other questions I'll stop there thank you so let me start with claim 9 if I can and just quickly address the question of forfeiture this whole argument always throughout the board proceedings and on appeal was at the intersection of motivation to combine and missing elements it was about the motivation to modify these very different references and so it's no surprise that the arguments took both forms and I would just note that on appeal you see in our opening brief that the first point heading at page 65 the last paragraph at opening brief page 72 are all about the question of elements and so there is certainly no forfeiture of that question here second I want to can you help me understand where in your briefing you raised a motivation related argument to the board regarding claim 9 like where in the appendix would you cite me to for that so I think the pages where the arguments were made here are 419 to 420 excuse me and at 489 it certainly is the case that we did not use the precise words motivation to combine and that's why I say you have to understand sort of the history here about what Google was arguing that they were arguing about the need to modify these references which again is right at the intersection of motivation to combine and missing elements but even if you thought that motivation to combine were not properly preserved in the board we still have the question of the missing elements argument and they haven't where is the missing elements argument best made in your blue brief so I think the pages that I just cited the point heading on wait wait wait the pages you just cited were from the board I'm sorry prior to that I just want to make sure start clean opening brief page 65 the point heading opening brief page 72 which I believe is the last or the penultimate paragraph of that argument both of those are talking about these missing element issues and again even if the court were concerned that these arguments have shifted at all this is exactly the sort of extraordinary case where given Google's admissions in their red brief it would be appropriate to recognize the issue if I can I do want to just quickly address this issue of inputs that counsel for Google raised that said at appendix 3169 paragraph 151 and that again is just wrong as a matter of claim construction the inputs are into the mobile device into as my friend put it the service specific application but that's not what claim 9 calls for claim 9 claims a message to the remote streaming service and so even if there is some antecedent inputting to the mobile device that doesn't satisfy the claim limitation of claim 9 where you need again a message going from the mobile device to the streaming content service that causes the first cloud server to take certain actions I think time's up thank you very much your honor we would ask the court to reverse or at a minimum vacate we thank both sides and the case is submitted